IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DIRECT LINE CORPORATION, | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 3:10-0423 |
| | ) JUDGE TRAUGER/KNOWLES |
| | ) JURY TRIAL DEMANDED |
| MICHAEL L. CARRINGTON and JOHN DOE(s), | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

For the reasons that follow, the undersigned recommends that a default judgment be entered against the pro se Defendant, Michael L. Carrington, pursuant to Fed. R. Civ. P. 16(f)(1)(A), for his failure to appear at a Status Conference set by this Court. Rule 16(f)(1)(A) provides as follows:

> (f) Sanctions.
>
> > (1) In General. On motion or on its own, the court may issue any just order, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
> >
> > > (A) fails to appear at a scheduling or other pretrial conference . . . .

The sanction of rendering "a default judgment" against the disobedient party is specifically provided for in Rule 37(b)(2)(A)(vi).

On March 31, 2011, Judge Trauger entered an Order that stated in relevant part:

> It is hereby ORDERED that the Magistrate Judge shall confer with
> the parties and inform this Court of a suggested trial date that will
> work for both parties, along with a suggested trial length for the
> jury trial.

Docket No. 70, p. 1-2.

On April 12, 2011, the undersigned entered an Order directing the parties to confer with each other, by telephone or by mail, and on or before April 25, 2011, file with the Court a suggested trial date along with a suggested trial length. Docket No. 76.

On April 20, 2011, Plaintiff filed a Response to that Order. Docket No.76. Plaintiff submitted e-mail correspondence to Defendant on April 12, 2011, suggesting a trial at the end of July or in August, 2011, and asking Defendant to respond. Docket No. 80-1, p. 3. Defendant did not respond. Docket No. 80, p. 1. Therefore, on April 18, 2011, counsel for Plaintiff again inquired with Defendant about these issues via e-mail. Docket No. 80-1, p. 2. Defendant responded to that e-mail as follows:

> As you know, Direct Line cancelled all employee insurance and my cobra. I had two months to get an operation on my back done that I have been putting off for 6 months, now I have 3 weeks. I just left the hospital and will get the procedure done some time next week. I will be bed ridden for at least 3 to 4 weeks and 8 weeks to regain 75% mobility. This is crippling to my already bad financial situation. My girlfriend has been paying most of my bills, and I am behind on my mortgage $13,000 dollars so every penny goes to keeping my condo which is currently leased. *The trial will have to be in Houston if I am to attend. As to a date I currently have no clue*. I am scheduled to go to Germany for a cursory job interview the third week of June and that is going to be delayed now. The offer has been made and accepted so I will go as soon as I can physically do so. If I accept the job I will be there for 9 months back in the U.S. for 3 months and back there for 9 more months. *3rd week in April of 2012, looks good to me right now*.

Docket No. 80-1, p. 1-2 (emphasis added).

On June 8, 2011, the undersigned entered an Order setting a Status Conference in this action for June 29, 2011, at 10:00 a.m. Docket No. 94. That Order specifically provided:

> Defendant, assuming that he is still proceeding pro se at that time, shall appear at the Status Conference. If he fails to do so, the undersigned will recommend that a default be entered against him.

*Id.,* p. 3.

On June 9, 2011, Plaintiff submitted a "Notice of Filing," which stated in part that Plaintiff's counsel had e-mailed the Order setting the Status Conference to Defendant at 9:53 a.m. on June 8. Docket No. 95. Plaintiff's counsel also filed a copy of the e-mail he sent to Defendant, as well as a copy of Defendant's response to him. Docket No. 95-1. The response is dated June 8, 2011, at 11:40 a.m., and states:

> I am out of the office and will be unavailable until June 15th while recovering from back surgery. Also note my vacation time: June 27th through July 11th. I will be out of the country where cell phone access is limited.

Docket No. 95-1, p. 1, 3.

Despite Defendant's unavailability until June 15, Defendant filed a document with the Court (Docket No. 97), which is not postmarked, but which was signed and dated by Defendant on June 9, 2011. That document is headed "Defendant's Reurging of a Previous Motion for Continuance Not Ruled on in a Timely Manner." That document also contains a handwritten "Note," which states:

> I will be out of the country from June 27 thru July 11th on a visit to a prospective client and employment. Advised Plaintiff of this on 4-18. See attached e-mail.

Docket No. 97, p. 2.

Defendant was aware of the setting of the Status Conference no later than 11:40 on June

3

8, 2011. Thus, he knew of the June 29 Status Conference when he advised Plaintiff that he would be on "vacation" from June 27th through July 11th. The next day, when he signed the referenced "Reurging," he stated that he would be out from June 27 through July 11 on a visit to a prospective client and employment.[1]

Almost two weeks later, Defendant sent to the Clerk's Office a document in an envelope postmarked June 22, 2011. Docket No. 100-2. The document is headed, "Defendant's Notice of Filing," and it is dated June 18, 2011. Docket No. 100. The body of that Notice, which was filed June 24, 2011 (and entered June 27, 2011), states:

> The Magistrate issued and order for a Conference without checking with me at to availability directly [*sic*]. The last time the court called me to tell me it was delayed so they have my cell number. I consulted with counsel and told them my availability last April 2011 for trial. Plaintiff knows that I will be unavailable for that date and did not tell the court or the court did not listen. Either way the court had 3 months notice I would be unavailable during the last week of June until after the second week in July.
>
> **WHEREFORE**, Respectfully, I request that Magistrate's Amend Order for Conference [*sic*] due to my inability to attend that was give to Plaintiff back in April 2011. see email attachment.

Docket No. 100.[2]

---

[1] While it may not be particularly relevant, nothing in the attached e-mails show that Defendant advised Plaintiff on April 18 that he would be out of the country from June 27 through July 11.

[2] The Court understands that Mr. Carrington called Judge Trauger's chambers shortly before 10:00 a.m. on the morning of June 29, inquiring as to whether the Court had received his "Notice." Mr. Carrington's call apparently was transferred to the undersigned's chambers, but no one in the undersigned's chambers spoke with Mr. Carrington.

With regard to the "substantive" matters set forth in Defendant's Notice, the Court typically does not check with the parties prior to setting Court hearings or status conferences. The Court has no idea what Defendant is referring to when he says "it" was delayed the "last

4

The undersigned denied Defendant's request to amend the Court's Order. Docket No. 102. At the Status Conference, Plaintiff's counsel stated that he had e-mailed the referenced Order (Docket No. 102) to Defendant on June 28, 2011 after it was entered.

Counsel for Plaintiff attended the Status Conference. Defendant did not attend the Status Conference.

The Court set the Status Conference in part to discuss: (1) Defendant's apparent failure to understand his obligations in defending this action; (2) his continuing to argue matters that the Court has already decided; and (3) a trial date. Docket No. 94, p. 2. The Court's previous Order also stated in part, "[Defendant] appears to believe he can postpone matters indefinitely by pleading that he cannot afford to travel to Nashville or is unable to travel to Nashville." *Id.*

In *Rodgers v. City of Warren,* 302 Fed. Appx. 371 (6th Cir. 2008), the Sixth Circuit discussed the appropriate standards for the imposition of sanctions under Rule 16(f)(1)(A). While the Court in *Rodgers* was concerned with a lower court's dismissal of an action as a sanction, rather than the imposition of a default as a sanction, the undersigned presumes that the same standards would apply because of the similar nature of both sanctions.

In *Rodgers*, the Court first noted that an abuse of discretion standard is appropriate when an appellate court reviews a district court's decision to invoke sanctions under Rule 16(f)(1)(A).

---

time" or that "the Court called me . . . so they have my cell number." Defendant further refers to the fact that he told Plaintiff's counsel about his "availability last April 2011 *for trial*." (Emphasis added.) What that has to do with the Status Conference is very unclear. Finally, Defendant states, "The court had 3 months notice I would be unavailable during the last week of June until after the second week in July." Once again, the Court has no idea what Defendant is talking about. The e-mail correspondence between Defendant and Plaintiff's counsel in April has been filed with the Court, and it says nothing about Defendant's unavailability during the last week of June and until after the second week in July. *See* Docket No. 83, p. 3-5.

The *Rodgers* Court also referred to a four factor test that an appellate court uses to assess the appropriateness of a district court's decision under Rule 16(f)(1)(A):

>(1) whether the party's failure is due to willfulness, bad faith, or fault;
>
>(2) whether the adversary was prejudiced by the dismissed party's conduct;
>
>(3) whether the dismissed party was warned that failure to cooperate could lead to [a default]; and
>
>(4) whether less drastic sanctions were imposed or considered before [default was entered].

*Id*. at 376 (citation omitted).

With regard to the first factor, the Sixth Circuit has also stated that, in order to support a finding that a party's actions were motivated by willfulness, bad faith, or fault, his conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer v. City Defince Police Dept.,* 529 F.3d 731, 737 (6th Cir. 2008) (citation omitted). In the case at bar, Defendant has displayed an intent to thwart judicial proceedings and a reckless disregard for the effect of his conduct on those proceedings.

Defendant has engaged in a pattern of delay throughout this lawsuit. Even though he is proceeding pro se, he filed a Motion to Dismiss for Lack of Personal Jurisdiction and a Motion to Transfer Venue, both of which were patently frivolous. Early in the litigation, Judge Trauger advised Plaintiff that he would not be appointed counsel (Docket No. 19), but Plaintiff continued to attempt to delay the progress of this case based upon the idea that he could not represent himself adequately and that he needed counsel appointed for him (Docket No. 88). He has also said on several occasions, in Court filings, that he simply will not attend a trial in Nashville. At

6

other times, however, Defendant has apparently stated that he may attend a trial in Nashville, although it will not be until April 2012.

Defendant appears to believe that he can control the proceedings in this action. In fact, the "Notice" Defendant filed on June 24 (Docket No. 100) does not seem to directly ask the Court to continue the Status Conference. Instead, it is a laundry list of excuses as to why Defendant should not be required to attend the Status Conference that the Court had set more than two weeks earlier. It is primarily directed at criticizing the Court for setting the Status Conference without checking with Defendant and for not "listening" to what Defendant has (allegedly) previously stated about his availability. Additionally, Defendant's Notice does not state exactly why he could not attend a Status Conference on June 29, nor does it state when he actually will be available to attend a Status Conference.

Moreover, Defendant knew by 11:40 a.m. on June 8 that the Court had entered an Order setting a Status Conference for June 29. Despite Defendant's allegedly being "out of the office till the 15th," he was able to submit at least one document that he signed on June 9 to the Court. In that filing, Defendant did not request a continuance of the Status Conference. Instead, Defendant simply informed the Court that he would be out of the country between June 27 and July 11 and that he had advised Plaintiff of that fact in April. While it may not be relevant what Defendant told Plaintiff in April, it suffices to say that Defendant did not advise the Court about this fact in a timely fashion and in a proper Motion seeking a continuance of the Status Conference.

Thus, the first factor is satisfied.

Second, Plaintiff has been prejudiced by Defendant's conduct, both throughout the

7

litigation and in Defendant's failing to appear at the Status Conference. As discussed above, now almost 4 months ago, Judge Trauger entered an Order directing the undersigned to confer with the parties and inform the Court of a suggested trial date, along with a suggested trial length. Docket No. 70. In response to that Order, the undersigned entered an Order directing the parties to confer with each other by telephone or by mail and to file with the Court a suggested trial date and a suggested trial length on or before April 25, 2011. Docket No. 76.

Defendant initially refused to respond to Plaintiff's inquiries about a possible trial date. Docket No. 80, p. 1. On April 26, 2011, Defendant filed a Response to the undersigned's Order stating in part:

> I have accepted employment out of the country from Aug 2011 for a two year contract term. With my surgery I may have to move that forward but after 9 months I will come back to the US for 3 months and will have money to pay an attorney and attend a trial in Nashville. My girlfriend is paying my expenses right now and there is 0 dollars for anything accept [*sic*] catching up my mortgage and saving my home from foreclosure. Direct Line caused this delay not me. The operation will require 4 to 8 weeks to begin to heal and physical therapy to get back to 75% mobility.
>
> *As of this instant* the only time I can commit for a trial date is April of 2012. I have commitments that prohibit me from doing it any other date prior to this. Also my time constraints right now are 100%.

Docket No. 83, p. 1 (emphasis added).

Defendant subsequently filed a document which stated in relevant part as follows:

> If this Court is to believe I am delaying discovery then they must appoint me an attorney to explain to me what I need to do and how to do it. . . . DL cancelled their employee insurance and thus my cobra on May 1st, 2011. I had to have some emergency procedures done before my insurance ended as I can not afford it without a company umbrella to apply under to make it affordable. I told Plaintiff's attorney I would be out of commission for at least 6

8

weeks yet they just demanded I do better. Really they can dictate that I heal faster than is possible. Losing my insurance made the cost of my medications go to almost 700.00 month. *I am now officially bankrupt.* . . .

. . .

Plaintiff is dead wrong that I have any ties to Nashville and that I travel there at will. My condo is leased and now without my medical insurance at Vanderbilt I no longer have medical care in Tennessee now. I have absolute zero reason to ever come to Nashville again. As I told Plaintiff's counsel that I was having a procedure done and it had to be done at my provider Vanderbilt and my girlfriend came to Houston to drive me there to get it done and then to Virginia to recuperate. . . . *I will never be back in Nashville except to sign the mortgage paper when my condo sells.*

. . .

I have answered all the questions that I can answer without an attorney advising me. I cannot afford an attorney and I need this court to appoint me one that can handle this case in my absence. The court has refused my change of venue and my hardship issues are absolute in that I cannot afford to travel or be a witness for myself.

. . .

Plaintiff's attorneys are the ones delaying this action by their actions of not accepting the answer as already asked [*sic*].

. . .

I am requesting a continuance to consult court appointed counsel when appointed by this court or in the alternative an indefinite continuance until at which time I can afford to hire counsel, are medically able to and afford to be able to travel to Nashville, rent a motel room and attend a trial.

Docket No. 88, p. 1-3 (emphasis added).[3]

Plaintiff filed this action more than one year ago, on April 28, 2010. Plaintiff averred in

---

[3] According to the record in the instant action, Defendant is a resident of Houston, Texas. The undersigned has reviewed the electronic case filing records of the United States Bankruptcy Court for the Southern District of Texas, which encompasses Houston, and there is no record of a bankruptcy proceeding for Michael L. Carrington.

9

its Complaint, in part, that Defendant had misappropriated trade secrets, had refused to turn Plaintiff's property (including a computer) after he was terminated, had deleted numerous files from other computer, and had unlawfully used Plaintiff's trademarks, particularly with regard to certain internet cites operated by Plaintiff. Docket No. 1. Plaintiff's Complaint stated in part:

> By the time trial and final judgment may be had, much of the trade secret and confidential and propriety information [Defendant] has will have become stale and therefore not as valuable. Therefore, if his breach in conduct does not promptly cease, the Court will lose the ability to grant complete relief.

*Id.,* p. 6.

More than a year later, Defendant is insisting that he cannot agree to a trial, at best until April 2012, and at worst, "As to a date I currently have no clue."

As the *Rodgers* Court stated:

> We have held that a defendant is prejudiced by a plaintiff's conduct where the defendant "wasted time, money, and effort in pursuit of cooperation which the plaintiff was legally obligated to provide."
> . . . Here, the district court found that the City was prejudiced because its counsel was present and fully prepared to proceed at each court-ordered status conference. In short, [plaintiff's] continued failure to appear wasted the court's time and resources as well as defendants. This finding is sufficient to satisfy the second prong. . . .

302 Fed. Appx. at 377-78 (citations omitted).

Thus, Plaintiff has been prejudiced by Defendant's conduct.

Third, Defendant was specifically warned in this Court's Order setting the Status Conference that if he failed to appear the undersigned would recommend that a default be entered against him. Docket No. 94, p. 3.

Fourth, less drastic sanctions were considered before the instant default recommendation.

10

Specifically, the Court decided to hold a Status Conference in part to discuss a trial date, and to discuss Defendant's obligations with regard to this lawsuit. Defendant essentially ignored the Court's Order, waiting until the last minute to file a "Notice" complaining that the Court had set the Status Conference without checking with him.

Furthermore, the Court questions whether any lesser sanction, at this point, would be appropriate or effective. As discussed above, Defendant has blatantly ignored a Court Order that he appear for a Status Conference. Plaintiff obviously cannot prosecute this action against Defendant if he fails to abide by Court Orders.

For the foregoing reasons, the undersigned recommends that a default judgment be entered against Defendant Michael L. Carrington.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge