# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DIRECT LINE CORPORATION, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-0423 |
| ) | Judge Trauger |
| MICHAEL L. CARRINGTON and ) | |
| JOHN DOE(S), ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM

Pending before the court is Magistrate Judge Knowles's *sua sponte* Report and Recommendation ("R&R"), which recommends that a default judgment be entered against defendant Michael Carrington pursuant to Fed. R. Civ. P. 16 "for his failure to appear at a Status Conference set by this Court." (Docket No. 104 at 1.) Defendant Carrington, proceeding *pro se*, has filed timely Objections to the R&R. (Docket No. 109.) As a default judgment is clearly not warranted by the facts and circumstances presented here, the court will sustain the defendant's Objections and decline to adopt the R&R. The court will also enter additional orders in an attempt to (1) get discovery back on track in this case and (2) ensure that this case is resolved on the merits.

## BACKGROUND

Carrington is a resident of Houston, Texas and a former employee of plaintiff Direct Line Corp. ("Direct Line"), which is a company based in Dickson, Tennessee. On April 28, 2010, Direct Line filed its Complaint, and, in a previous R&R, Magistrate Judge Knowles summarized

1

the plaintiff's claims and allegations:

> In this action, Plaintiff raises claims of trademark infringement, unfair competition, theft and misappropriation of trade secrets, breach of fiduciary duty, breach of duty of loyalty, breach of duty of trust, breach of duty against self-dealing, tortious interference with a business relationship, conversion, and unjust enrichment. Plaintiff's Complaint essentially alleges that Defendant was employed by Plaintiff as a marketing representative and project manager on or about January 15, 2004. Plaintiff alleges that Defendant was privy to "a great deal of confidential and proprietary information," in that position.
>
> Defendant was terminated for cause in January 2010, after which he refused to return to Plaintiff certain equipment, a SIM card and a computer hard drive, which included important passwords, procedures, and files, belonging to Plaintiff. Plaintiff avers that Defendant repeatedly confirmed that he had taken proper actions to back up Plaintiff's electronic files, but he later claimed that approximately 3,000 electronic files were lost or destroyed when the computer's hard drive crashed. Plaintiff alleges that Defendant backed up its files to a computer server that was outside its control. Plaintiff further avers that Defendant has altered contact information for its web pages to direct visitors of its web sites to Defendant's own phone number and e-mail address.

(Docket No. 42 at 2)(citation omitted and paragraph break added).

A review of the filings in this case reveals that the plaintiff – who maintains that its propriety information is at risk – has desired to move this matter along quickly, while Carrington, either through being an overwhelmed *pro se* litigant or a somewhat obstinate individual (or both), has not kept up. Indeed, for a variety of reasons, Carrington (after receiving several extensions) did not file his Answer and integrated Motion to Dismiss for Lack of Personal Jurisdiction (which was later denied) until July 30, 2010. (Docket No. 22.) On September 1, 2010, after not receiving responses to its expedited discovery, Direct Line filed a

Motion to Compel and, on October 29, 2010, Direct Line filed a Motion for Sanctions and Default, with each motion alleging that the defendant had not provided timely discovery responses or, when those responses were finally provided, they were glaringly deficient.[1] (See Docket Nos. 31 and 44.)

In a March 31, 2011 Order, this court noted that, from one of the defendant's filings, it appeared that there was some confusion over the trial date of this matter. Indeed, a "target date" in July 2011 had been mentioned in one of the Magistrate Judge's previous orders, but no firm date had been entered on the docket. (Docket No. 70.) The court therefore directed Magistrate Judge Knowles to "confer with the parties and inform this court of a suggested trial date that will work for both parties." (*Id*.) In response to that Order, Magistrate Judge Knowles directed the parties to confer and inform him, by April 25, 2011, of a mutually agreeable trial date. (Docket No. 76.)

In an April 21, 2011 Order, Magistrate Judge Knowles noted that he had received a response from the plaintiff regarding "this court's Order requesting information about a trial date," in which the plaintiff stressed the difficulty it was having obtaining discovery from Carrington. (Docket No. 81.) In light of numerous outstanding discovery matters still to be resolved, the Magistrate Judge declined to recommend a trial date but stated that "a trial date in late July or early August 2011 would not be feasible, given the outstanding discovery matters."

---

[1]The first Motion for Default was denied (See Dockets Nos. 53 and 61), and, through the Fall of 2010 and Winter of 2011, the Magistrate Judge ruled on various discovery and jurisdictional issues, the plaintiff filed various motions to extend the relevant discovery deadlines, and the defendant filed materials seeking to change venue or otherwise challenge developments in the case. (*See generally* Docket Nos. 42-67.)

(*Id.*)  This court has not yet set a firm trial date.

On May 11, 2011, the plaintiff filed two additional discovery motions and a motion for a status conference "to address outstanding discovery motions in this matter, necessary amendments to the current scheduling order, and setting this matter for trial."[2]  (Docket No. 87.)  In his response, Carrington denied "delaying discovery," stating that, as a *pro se* litigant, he had "done the best [he could] to do everything asked of [him]" and had "answered all the questions that I can answer without an attorney advising me."  (Docket No. 88 at 1.)  Carrington claimed that he was having significant difficulty keeping up with the plaintiff's discovery requests and that he was in dire straits, given health problems and extreme financial difficulties.  (*Id.*)

---

[2]In one of these motions, the plaintiff sought that the 226 requests for admission (RFAs) sent to the defendant be deemed admitted, as the defendant had allegedly not submitted a timely response.  (Docket No. 86.)  Specifically, the plaintiff claimed that, on March 15, 2011, it had sent the defendant 226 RFAs, supposedly as a way to "streamline" the litigation and to avoid taking the defendant's deposition, and the defendant had only responded to 26 of the RFAs.  (*Id.*)  On March 28, 2011, the defendant moved for an extension of time to respond to "interrogatories."  (Docket No. 68.)   This motion is still pending before Judge Knowles.  Yet, on June 1, 2011, Judge Knowles granted the May 11, 2011 "Motion to Deem" as unopposed.  (Docket No. 89.)  The docket reveals that the defendant filed opposition to the motion on May 31, 2011.  (Docket No. 88.)   Whether or not this response was technically timely, granting the May 11, 2011 "Motion to Deem" as unopposed when the March 28, 2011 Motion for Extension (which this court reads broadly to request a general extension of time to respond to discovery (*See* Docket No. 97)) had not yet been ruled upon may not have been entirely fair to the defendant.

While the complete set of RFAs are not appended to the motion, the court suspects that – if these RFAs were all deemed admitted for liability purposes -- judgment as a matter of law against the defendant would be the natural result.  Given the circumstances discussed in this footnote and the fact that the defendant is proceeding *pro se*, such a result would not be consistent with the fundamental interest in this case being resolved on its merits.  Therefore, in the attached Order, the court will, among other things, vacate the Order deeming these RFAs admitted and grant the defendant a general 30-day extension to respond to all outstanding discovery, including these 226 RFAs.

Carrington concluded by, as he had done before, requesting an attorney be appointed to represent him. (*Id.*)

On June 8, 2011, Magistrate Judge Knowles entered an Order setting a status conference for June 29, 2011 at 10 a.m. (Docket No. 94.) In that Order, Judge Knowles expressed considerable frustration that the defendant, in his various filings, (1) "is still focused on the idea that it is somehow unfair for him to have to defend this case in Tennessee," despite the court's rulings that there is personal jurisdiction over Carrington here and that venue is appropriate; (2) continues to claim that he could not comply with the discovery demands of this case without counsel, despite the fact that the court has declined to appoint counsel; and (3) "appears to believe that he can postpone matters indefinitely by pleading that he cannot afford to travel to Nashville or is unable to travel to Nashville." (*Id*. at 2.) This Order concludes that the defendant "shall appear" at the status conference and, "if he fails to do so, the undersigned will recommend that a default be entered against him." (*Id*. at 3.)

On June 9, 2011, the plaintiff filed a Notice alerting the court that, in correspondence between the plaintiff and Carrington regarding the June 8th Order, Carrington had stated that he would be on "vacation time" from June 27th through July 11th, with limited cell phone access. (Docket No. 95 Ex. 1 at 3.) While the plaintiff used the Notice to further accuse Carrington of improperly delaying this matter, the plaintiff also stated that it would be available for the status conference on other dates, should the court elect to move the conference. (Docket No. 95.)

Additionally, on June 13, 2011, in a hand-written note appended to another filing, the defendant informed Judge Knowles that "I will be out of the country from June 27 thru July 11

5

on a visit to a prospective client and employment." (Docket No. 97 at 2.) On June 24, 2011, with the date of the status conference still set for June 29th, Carrington filed another Notice with the court that he was "unavailable during the last week of June until after the second week in July," and he specifically asked that the "Order for Conference" be amended "due to my inability to attend." (Docket No. 100.) On June 28, 2011, Judge Knowles entered an Order that simply stated that "the request to Amend this Court's Order is Denied." (Docket No. 102.)

As indicated by the phone records attached to the defendant's Objections to the R&R, at 9:55 a.m. on June 29, 2011, Carrington called Judge Trauger's chambers and was on the phone for seven minutes. (Docket No. 109 Ex 1.) In his Objections, Carrington maintains that he "talked to the clerk who transferred me to the magistrate's clerk . . . and I left a message that I was calling in because I could not attend personally and to please call me back." (Docket No. 109 at 1.) Carrington further maintains that he never was called back, but he subsequently confirmed with Judge Knowles's clerk that his voice mail was received. (*Id*.)

On June 30, 2011, Magistrate Judge Knowles issued the R&R recommending that a default judgment be entered against Carrington for failing to attend the status conference. (Docket No. 104.) On July 12, 2011, Carrington filed timely Objections to the R&R, stating that he had repeatedly informed the court prior to the conference that he could not attend on the date set by the court and also that he did "everything [he] could to attend" the conference. (Docket No. 109 at 1.) The defendant pleads with the court not to adopt the R&R stating, "the Court's acceptable recourse is to reschedule not request an order of default when I could not make the first date ordered. Are we not reasonable people? What more can I do? The law

6

cannot be this arbitrary." (*Id*. at 3.)

## **ANALYSIS**

When a Magistrate Judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a party specifically objects. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). Accordingly, this court will review the Magistrate Judge's R&R *de novo*, as its recommendation would, in essence, end this litigation.

**I.     Legal Standard for Default Judgment Under Rule 16**

Federal Rule of Civil Procedure 16(f) states that, "on motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney fails to appear at a scheduling or other pretrial conference." Rule 37(b)(2)(A) lists several potential sanctions for discovery abuses, affording the court the option to strike pleadings, prohibit certain evidence, dismiss the case, or enter a default judgment against the disobedient party.

In determining the scope of the sanction, the Sixth Circuit has directed district courts to consider (1) "whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault," (2) whether the adversary has been prejudiced, (3) whether the disobedient party "was warned that failure to cooperate could lead to the sanction," and (4) whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). "Willfulness, bad faith, or fault" can only be found where the party to be sanctioned had displayed "an intent to thwart judicial proceedings or a reckless disregard for the effect of his

7

conduct on those proceedings." *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008)(internal quotation omitted).

The Sixth Circuit has noted that "a district judge holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment." *Grange Mut. Cas. Co. v. Mack*, 270 Fed. Appx. 372, 376 (6th Cir. 2008)(referring to the default judgment sanction as the court's "strongest weapon"). Before dismissing a case brought by a disobedient plaintiff or issuing a default judgment against a disobedient defendant, the court must recognize that these are "sanction[s] of last resort," and the court must consider whether such a sanction appropriately punishes the offending party and sensibly deters similar misconduct by future litigants. *Peltz v. Moretti*, 292 Fed. Appx. 475, 478 (6th Cir. 2008)(internal quotation omitted). Indeed, without a clear showing of "willfulness, bad faith, or fault," by the defendant, entry of a default judgment against the defendant in this context is not appropriate. *Id.* That is, an entry of default should be avoided unless the record clearly shows continuous delay or "contumacious conduct by the offending party." *Am. Book Co. v. Consolidated Group of Companies*, 2011 WL 1457686, *4 (E.D. Tenn. Apr. 15, 2011)(internal quotation omitted).

**II**.     **The R&R**

Viewed against this legal standard, adopting an R&R that recommends entering a default judgment against the defendant because he failed to attend the status conference would be a clear abuse of the court's discretion. When the plaintiff alerted Judge Knowles on June 9th that the defendant had a conflict with the June 29th date, Judge Knowles should have simply moved the status conference to some date shortly after July 11th. He could have also done this after the

8

defendant filed either the June 13th or June 24th notice, both of which stated that the June 29th date would not work. It is common for the court to set dates for conferences and hearings and for one of the parties to raise a conflict, even if that conflict relates to a personal matter such as a vacation or family issue. When this happens, the court usually simply moves the date to a mutually agreeable one. That is what should have happened here.

What sets this matter apart and truly troubles the court, however, is that it appears that the defendant did still attempt to participate in the status conference. That is, the defendant does not now offer some meek excuse for failing to appear but offers credible evidence that he called Judge Trauger's chambers and then was passed to Judge Knowles's chambers for purposes of participating in the conference but, for whatever reason, no one picked up the phone at Judge Knowles's chambers or called the defendant back. The entry of a default judgment against a *pro se* defendant for failing to attend a status conference, under this set of facts, would be a miscarriage of justice.

Further, the legal analysis employed by the R&R is flawed. While the R&R does list the four factors for analyzing the appropriateness of a sanction for misconduct during litigation, the R&R entirely ignores the fact that, as discussed above, the Sixth Circuit has repeatedly stated that a default judgement is a drastic sanction only to be used as a last resort. That is, entry of a default judgment is a sanction not to be employed lightly or without thorough contemplation.

Additionally, the court finds the Magistrate Judge's application of the four factors to be unpersuasive. In finding "willfulness, bad faith, or fault," Judge Knowles referred to the personal jurisdiction and venue motions that the defendant filed as "patently frivolous," and he

9

also criticized the defendant for continuing to request counsel and for suggesting that he could not attend a trial in Nashville or could not do so until April 2012. (Docket No. 104 at 6-7.) Judge Knowles also accused the defendant of believing that "he can control the proceedings in this action," asserting that the defendant did not explicitly ask for a continuance in the June 24 Notice (in this court's view, he did) but rather castigated the court for setting a status conference without checking with the defendant first. (*Id*. at 7.)

While this court has no doubt that the defendant has been difficult to deal with, there is little here to suggest that, generally, the defendant has engaged in conduct in "bad faith" or with a "reckless disregard" for these proceedings. It does not appear, for instance, that the plaintiff has attempted to take the defendant's deposition, and the defendant failed to appear. Further, the primary basis for imposing the sanction is that the defendant failed to appear for a status conference; as noted above, there is nothing in the defendant's conduct with regard to the status conference that suggests bad faith.

In the prejudice analysis, Judge Knowles simply states that the plaintiff has been prejudiced by the defendant's failure to appear at the status conference and he goes on to quote at length from the defendant's filings in which, at one point, he suggests an April 2012 trial date but later makes brash statements regarding the court's obligation to appoint him counsel and his lack of desire or need to return to Nashville for any purpose. (*Id*. at 8-10.) Again, the defendant would help himself if he were more respectful and cooperative; the court assigned Judge

Knowles – not the defendant – the responsibility to recommend the trial date.[3] Further, as indicated above, there is absolutely no support for the notion that the defendant's conduct with regard to the status conference, which is the genesis of the sanction here, prejudiced the plaintiff.

On the final two prongs, Judge Knowles correctly states that he did warn the defendant that failure to appear at the status conference would result in a default judgment recommendation and that "less drastic sanctions were considered before the instant default recommendation." (*Id.* at 10-11.) This analysis does not appear to be justified by the record. As indicated above, the court believes that the *pro se* defendant made a reasonable effort to have the status conference moved and, when that failed, he still made a reasonable effort to participate. His conduct with regard to the status conference was not sanctionable by default judgment.

## **CONCLUSION**

For the reasons discussed herein, the court will sustain the defendant's Objections to the R&R and rejects the R&R.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
U.S. District Court Judge

---

[3]While the Magistrate Judge and the plaintiff apparently believed that the April 2012 trial date suggested by the defendant would not provide the desired expediency in resolving this litigation, the path sought here is certainly no more expedient, especially given the defendant's right to appeal the entry of the default judgment and the sound argument that the defendant would have had on appeal that entry of the default judgment was an abuse of discretion.